**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TFT GALVESTON PORTFOLIO, LTD, | ) | CIVIL ACTION NO. 3:19-cv-70 |
| as successor in interest to TFT # 3, LTD, and | ) | |
| JAMES W. GARTRELL, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ _____ | ) | |

## COMPLAINT

The United States of America alleges as follows:

### NATURE OF THE ACTION

1. The United States brings this action to enforce the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§ 100.202 and 100.205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12213; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36 Appendices A & D ("ADA Standards"). As set forth in more detail below, the United States alleges that Defendants have discriminated against persons with disabilities by failing to design and construct an eight-building addition to an apartment complex in Galveston, Texas, so that it is accessible to persons with disabilities.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. §§ 3614(a) and 42 U.S.C. § 12188(b)(1)(B).

1

3. Venue is proper in this District under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged in this action occurred in this District and all Defendants are registered or reside in this District.

## THE SUBJECT PROPERTY

4. Between 2001 and 2003, defendants participated in the design, construction, or design and construction of an eight building addition to an apartment complex known as the "Seasons Resort."

5. The Seasons Resort is a multifamily apartment complex located at 8100 Seawall Boulevard in Galveston, Texas, and presently consists of sixteen three-story apartment buildings and associated amenities.  Eight of the sixteen apartment buildings and their corresponding amenities were built prior to the time that the Fair Housing Act's accessibility requirements became law and, therefore, are not at issue in this lawsuit.  The eight building addition is "the Subject Property" that is the subject of this lawsuit.

6. The Subject Property is comprised of eight three-story, non-elevator residential buildings located on the western side of the Seasons Resort, along with the associated public and common use areas that serve those buildings.  The eight residential buildings contain a total of 24 single-story, ground-floor units.   The public and common use areas at the Subject Property include a rental office, a swimming pool, mail and trash facilities, tennis courts (which now serve as a dog park), pet waste stations, and covered parking.

## DEFENDANTS

7. Defendant TFT Galveston Portfolio Ltd. ("Galveston Portfolio") is a limited partnership registered in the State of Texas.  It is the current owner of the Subject Property.  It is

also the successor in interest to TFT #3 Ltd. ("TFT #3"), a limited partnership that was the original owner and developer of the Seasons Resort and the Subject Property.

8. Between December 2001 and October 2004, TFT #3, through its agent and sole individual owner, Walter Teachworth, owned and operated the Seasons Resort. During this time, TFT #3, through Mr. Teachworth, carried out the design and construction of the Subject Property. TFT #3 and Mr. Teachworth's participation in the design and construction of the Subject Property included, but was not limited to:

   a.  selecting, using, and or modifying building plans that he knew or should have known would result in features that are inaccessible to people with disabilities;

   b.  making decisions about site layout or construction;

   c.  participating in the submission of permit applications;

   d.  financing construction costs; and

   e.  selecting, hiring, or overseeing design and construction professionals, including engineers and contractors.

9. In October 2004, after the Subject Property was completed, TFT #3, through Mr. Teachworth, transferred ownership of the Seasons Resort, including the Subject Property, to Defendant Galveston Portfolio. Mr. Teachworth was the sole individual owner and manager of both TFT #3 and Defendant Galveston Portfolio at the time of the transfer. The conveyance occurred by special warranty deed for the sum of $10.00.

10. Soon after the transfer of the Seasons Resort and the Subject Property to Defendant Galveston Portfolio, TFT #3 dissolved. Defendant Galveston Portfolio, through Mr. Teachworth, continued to operate and manage all aspects of the Seasons Resort and the Subject

Buildings until his death in 2014.  Mr. Teachworth was the sole manager of Defendant Galveston Portfolio's assets during this time.

11. Defendant Galveston Portfolio has continuously owned and manage the Seasons Resort and the Subject Property without a break in ownership since it acquired the properties in October 2004.

12. Defendant James W. Gartrell, Jr. ("Defendant Gartrell") has been licensed as a civil engineer by the State of Texas since 1964.  At all relevant times, Defendant Gartrell worked as a civil engineer doing business as Gulf Coast Engineering and Surveying in Texas City, Texas. Defendant Gartrell personally participated in the design and construction of the Subject Property. These actions include, but were not limited to:

    a.  selecting, using, and or modifying building plans that he knew or should have known would result in features that are inaccessible to people with disabilities;

    b.  making decisions about site layout or construction; and

    c.  participating in the submission of permit applications.

## FACTUAL ALLEGATIONS

13. Defendant Galveston Portfolio is liable as the successor in interest to TFT #3 for the inaccessible design and construction of the Subject Property carried out by TFT #3 and its agent Walter Teachworth.

14. The Defendants' pattern or practice of failing to design and construct dwellings, public and common-use areas, and associated places of public accommodation in compliance with the FHA and the ADA, as alleged in this complaint, may extend to other multifamily

4

properties and, absent injunctive relief, to other multifamily properties that may be designed and constructed in the future.

**Fair Housing Act Allegations**

15. The Subject Property, described above, was designed and constructed for first occupancy after March 13, 1991.

16. The Subject Property, described above, is a "dwelling" and contains "dwellings" within the meaning of 42 U.S.C. § 3602(b).

17. The twenty-four single-story, ground-floor units ("covered units") in the Subject Property described above are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f).

18. The covered multifamily dwellings in the Subject Property are subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C).

19. The United States obtained property plans for the Subject Property and engaged an architect with expertise in accessibility issues who surveyed a representative sample of covered units, the routes from those units to the public and common use areas of the property, and the rental office.  The following is an illustrative but not exhaustive list of inaccessible features created and caused by Defendants in designing and constructing the Subject Property:

    a.  Multiple stairs, steps and other barriers at routes from the parking to unit entries;

    b.  Multiple stairs, steps and other barriers at routes from unit entries to the common use amenities that serve the residential buildings, including: the rent drop at the rental office; covered parking; walks and courtyards; mail centers; the pool; tennis courts (which currently function as a dog park); pet waste stations; and trash dumpster;

5

c.  Excessive running slopes and cross slopes at the approach walkways leading to unit entry doors;

d.  Steps at the exteriors of unit entry doors;

e.  Knob-style hardware on unit entry doors that makes it difficult to grasp or open;

f.  Unbeveled and excessively high thresholds at unit entry doors that make it difficult for a wheelchair user to traverse safely;

g.  Bathroom doors that are too narrow for a wheelchair user to pass through without injury.  Bathroom doors are only 24" wide and provide less than a 22" wide opening into the bathroom.

h.  Electrical outlets that are mounted too low above the floor (less than 15"), and thermostats that are mounted too high above the floor (more than 54"), outside of reach range of wheelchair users;

i.  No reinforcements in the bathroom walls to allow for the future installation of grab bars;

j.  Insufficient maneuvering space in bathrooms for wheelchair users.  Bathrooms have less than 30" x 48" clear floor space at the vanities beyond the door swing, and have insufficient maneuvering space at many of the toilets;

k.  Insufficient maneuvering space in kitchens for wheelchair users.  Kitchens have less than 40" clearance between opposing elements;

l.  Entryways to unit kitchens that are too narrow for wheelchair users to pass through safely; and

m.  Designated accessible parking spaces lack an accessible access aisle and an accessible route to the units.

## ADA Allegations

20. The rental office at the Subject Property was designed and constructed for first occupancy after January 26, 1993, and is a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104. The rental office, therefore, is required to meet the accessibility requirements of the ADA Standards.

21. The rental office is not designed and constructed so that it is readily accessible to and usable by individuals with disabilities, as required by the ADA, 42 U.S.C. § 12183(a)(1). The rental office fails to comply with the ADA Standards.

22. The inaccessible features at the rental office include, but are not limited to:

    a. the walkway from the public sidewalk to the rental office has portions lacking a stable surface, and other portions with noncompliant level changes and widths;

    b. the entry to the rental office includes a doorway that is too narrow, a noncompliant threshold and noncompliant door hardware;

    c. the bathroom in the rental office includes: a doorway that is too narrow; noncompliant door hardware; insufficient turning space and clear floor space to approach and use the fixtures; fixtures that are too high to be usable; and no grab bars; and

    d. the designated accessible parking lacks access to the accessible route and compliant signage.

## Fair Housing Act Claims

23. The United States re-alleges and incorporates by reference the allegations set forth above.

24. The conduct of the Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

25. The Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

    a.  the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.  all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons in wheelchairs; and

    c.  all premises within such dwellings contain the following features of adaptive design:

        i.  an accessible route into and through the dwelling;

        ii.  light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

        iii.  reinforcements in bathroom walls to allow later installation of grab bars; and

        iv.  usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

26. The Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.  discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of a disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.  discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with

a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

    c.  failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

27. The conduct of the Defendants described above constitutes:

    a.  a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, 42 U.S.C. §§ 3601-3619; and

    b.  a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance.

28. Persons who may have been the victims of the Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries because of the conduct described above.

29. The conduct of the Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## ADA Claims

30. The United States re-alleges and incorporates by reference the allegations set forth above as against Defendant Galveston Portfolio.

31. The conduct of Defendant Galveston Portfolio described above constitutes:

    a.  a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(I) and 28 C.F.R. § 36.503(a); and

      b.   unlawful discrimination that raises an issue of general public importance

           within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and

           28 C.F.R. § 36.503(b).

    32. Defendant Galveston Portfolio violated Title III of the ADA by designing and constructing places of public accommodation without ensuring that it is readily accessible to persons with disabilities to the maximum extent feasible, as required by 42 U.S.C. § 12183(a)(1).

    33. Persons who may have been victims of the Defendant Galveston Portfolio's discriminatory conduct are aggrieved as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries because of the conduct described above.

    34. The conduct of Defendant Galveston Portfolio described above was intentional, willful, and taken in disregard of the rights of others.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an order that:

      a.   Declares that the conduct of the Defendants, as alleged in this complaint, violates the Fair Housing Act;

      b.   Declares that the conduct of Defendant Galveston Portfolio, as alleged in this complaint, violates the Americans with Disabilities Act;

      c.   Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

           i.   failing or refusing to bring the dwelling units and public and common-use areas at covered multifamily properties in which each defendant was or is involved in the design and/or construction into full compliance with the FHA;

10

    ii.   failing or refusing to conduct FHA compliance surveys to determine whether the retrofits specified in paragraph (i) above or otherwise performed comply with the FHA;

    iii.   designing or constructing any covered multifamily dwellings and public and common-use areas in the future that do not comply with the FHA; and

    iv.   failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

   d.   Enjoins Defendant Galveston Portfolio, its officers, employees, agents, successors, and all other persons in active concert or participation with it from:

    i.   failing or refusing to bring the public accommodations, including rental offices and other public-use areas, at covered multifamily properties in which the defendant was or is involved in the design or construction, into full compliance with the ADA and the ADA Standards;

    ii.   failing or refusing to conduct ADA compliance surveys to determine whether the retrofits specified in paragraph (i) above or otherwise performed comply with ADA and the ADA Standards;

    iii.   designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

    iv.   failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant TFT Galveston's

unlawful practices to the position they would have been in but for the

discriminatory conduct.

    e.  Awards monetary damages under 42 U.S.C. § 3614(d)(1)(B) and

        42 U.S.C. § 12188(b)(2)(B) to all persons harmed by the Defendants' discriminatory

        housing practices; and

The United States further prays for such additional relief as the interests of justice may require.

Dated: February 21, 2019

                                   Respectfully submitted,

                                   WILLIAM P. BARR
                                   Attorney General

                                   *s/ Eric S. Dreiband*_____
                                   ERIC S. DREIBAND

RYAN K. PATRICK                  Assistant Attorney General
United States Attorney             Civil Rights Division

By: s/ *Elizabeth F. Karpati*
ELIZABETH F. KARPATI           *s/ Sameena Shina Majeed*___
Assistant United States Attorney   SAMEENA SHINA MAJEED
State Bar No. 00794069           Chief
SDTX: 20567
1000 Louisiana, Suite 2300       *s/ Sara L. Niles*_____
Houston TX 77002             TIMOTHY J. MORAN
(713) 567-9767 (PHONE)      Deputy Chief
(713) 718-3303 (FAX)         SARA L. NILES
Email: Elizabeth.Karpati@usdoj.gov  MA Bar Reg. No. 634257
                                   Trial Attorney
                                   Housing and Civil Enforcement Section
                                   Civil Rights Division
                                   U.S. Department of Justice
                                   950 Pennsylvania Avenue NW
                                   Northwest Building, 7th Floor
                                   Washington, DC 20530
                                   Phone: (202) 514-2168
                                   Fax: (202) 514-1116
                                   E-mail: Sara.Niles@usdoj.gov

                                   Attorneys for Plaintiff
                                   United States of America