United States District Court
Southern District of Texas
**ENTERED**
December 06, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>    )<br>Plaintiff,      )<br>    )<br>v.      )<br>    )<br>TFT GALVESTON PORTFOLIO, LTD,      )<br>as successor in interest to TFT # 3, LTD, and      )<br>JAMES W. GARTRELL, JR.,      )<br>    )<br>Defendants.      )<br>_____ ) | CIVIL ACTION NO. 3:19-cv-70 |

## PROPOSED CONSENT ORDER

### I. INTRODUCTION

1.   This Consent Order is entered between the United States of America and Defendants TFT Galveston Portfolio, Ltd. ("Galveston Portfolio"), and James W. Gartrell, Jr. ("Gartrell") (collectively, the "Defendants").  The United States and the Defendants are herein collectively referred to as "the Parties."

2.   This action is brought by the United States to enforce the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§ 100.202 and 100.205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12213; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36 Appendices A & D ("ADA Standards").  This action is brought pursuant to 42 U.S.C. § 3614(a), and is also brought pursuant to 42 U.S.C. § 12188(b)(1)(B).

3.   Specifically, the United States' Complaint alleges that Defendants engaged in a pattern or practice of discrimination against persons with disabilities by failing to design and construct covered multifamily dwellings at an eight-building addition to an apartment complex known as the Seasons Resort in Galveston, Texas with the features of accessible and adaptable design and construction required by the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1), (f)(2) and (f)(3)(C).  The Complaint further alleges that Defendant Galveston Portfolio designed and constructed places of public accommodation, including the rental office for multifamily dwellings located at the Seasons Resort, without ensuring that those places of public

accommodation are readily accessible to persons with disabilities as required by the ADA, 42 U.S.C. § 12182(a)(1) and the ADA Standards for Accessible Design, 28 C.F.R. Pt. 36 Appendices A & D ("ADA Standards").

## II.   DEFENDANTS

4.    Defendant TFT Galveston Portfolio, Ltd. ("Galveston Portfolio") is a limited partnership registered in the State of Texas.  Galveston Portfolio is the current owner of the Seasons Resort in Galveston, Texas.  It is also the successor in interest to TFT #3, Ltd., a limited partnership that was the owner and developer of the eight building addition and leasing office at the Seasons Resort property constructed between 2001 and 2003 (the "Subject Property").

5.    Defendant James W. Gartrell, Jr. ("Gartrell") is a civil engineer licensed in the State of Texas, and has his principal place of business in Texas City, Texas.  Gartrell participated in the design and construction of the Subject Property.

## III.   RELEVANT REQUIREMENTS OF THE FHA AND ADA

6.    The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered units" and must include certain basic features of accessible and adaptable design to make such units usable by a person with a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

7.    The accessible and adaptable design provisions of the Fair Housing Act require for covered multifamily dwellings:  (a) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (b) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (c) an accessible route into and through the dwelling; (d) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (e) reinforcements in bathroom walls to allow later installation of grab bars; and (f) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).  These features are referenced in this document as the "FHA Accessible Design Requirements."

8.    For the purposes of this Consent Order, the United States and the Defendants (the "Parties") agree that the eight building addition and leasing office that comprise the Subject Property were designed and constructed for first occupancy after March 13, 1991, and therefore, all the units in the eight non-elevator buildings with four or more ground-floor dwelling units at the Subject Property are "covered multifamily dwellings" within the meaning of the FHA, 42

U.S.C. § 3604(f)(7)(A) and (B).  As such, those units and the public and common use areas including the accessible pedestrian routes at the Subject Properties must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

9.     The rental office at the Subject Property was designed and constructed for first occupancy after January 26, 1993, and is a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.  The rental office, therefore, is required to meet the accessibility requirements of the ADA Standards.

## IV.     VIOLATIONS AT THE SUBJECT PROPERTY

10.     The United States has determined that the features at the Subject Property that fail to comply with the FHA Accessible Design Requirements include, but are not limited to: (a) the existence of multiple stairs, steps and other barriers at routes from unit entries to parking and common use amenities, such as the rent drop box at the rental office, mail centers, the pool, pet waste stations and trash dumpsters; (b) steps leading up to primary unit entries; (c) inaccessible knob hardware at unit entries; (d) too-high thresholds at unit entries; (e) bathroom and kitchen doorways that are too narrow; (f) inaccessible electrical outlets and temperature controls; and (g) a failure to design and construct all premises within ground-floor dwellings so that they contain the following features of adaptive design: (i) an accessible route into and through the dwelling; (ii) reinforcements in bathroom walls to allow later installation of grab bars; and (iii) usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

11.     Additional inaccessible features at the rental office that violate the ADA and the ADA Standards include, but are not limited to the primary entry doorway that is too narrow and has inaccessible knob hardware; a bathroom that is not usable by a wheelchair user because of its too-narrow doorway, insufficient maneuvering space, fixtures mounted too high, and lack of grab bars; as well as lack of compliant accessible parking at the rental office.

## V.     CONSENT OF THE PARTIES TO ENTRY OF THIS ORDER

12.     Defendants Galveston Portfolio and Gartrell agree to address the elements that the United States alleges are not in compliance with the Accessible Design Requirements of the FHA, the ADA and the ADA Standards, as set forth below.

13.     The Parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. § 3614(a) and 42 U.S.C. § 12188(b)(1)(B).  The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or trial.

14.     As indicated by the signatures appearing below, the parties have agreed to the entry of this Consent Order.

Based on the Court's review of the record and with the agreement of the parties, the Court orders as follows:

## VI.     GENERAL INJUNCTION

15.     The Defendants, and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604(f) and the Americans with Disabilities Act, 42 U.S.C. § 12183(a)(1).

16.     All future covered multifamily housing designed or constructed by the Defendants after the date of this Consent Order shall comply with the accessibility requirements of the Fair Housing Act and the Americans with Disabilities Act. Defendants will take all actions to make the construction of any property under construction, or any future construction of covered multifamily housing, fully compliant with the Accessible Design Requirements of the Fair Housing Act, the FHA Guidelines, the ADA, and the ADA Standards.

## VII.     RETROFITS AT THE SUBJECT PROPERTY

17.     The United States, as set forth herein and in its Complaint, alleges that the Subject Property does not meet the accessibility requirements of the FHA and HUD's Fair Housing Accessibility Guidelines ("FHA Guidelines"), 24 C.F.R. Ch.I., Subch. A, App. IV, the ADA, and the ADA Standards.   To address the United States' allegations, the Defendant Galveston Portfolio, in accordance with the FHA the FHA Guidelines, the ADA and the ADA Standards shall complete the retrofits to common areas, entrances, exterior routes, and parking at the Subject Property—as detailed in Appendix A to this Order.

18.     All retrofits shall be performed by duly licensed and bonded contractors acting in conformity with applicable state and local regulations regarding building construction, repairs, and improvements, with Defendant Galveston Portfolio being responsible for obtaining all necessary building permits, inspections, and otherwise complying with all related state and local regulatory requirements (including payment of all permit and/or inspection fees).   All retrofits shall be performed in a professional and workmanlike manner consistent with good and generally accepted construction standards for multifamily dwellings substantially similar to the Subject Properties.

19.    Defendant Galveston Portfolio agrees to make all the retrofits outlined in Appendix A to the public and common use areas at the Subject Property at the Seasons Resort within three hundred and sixty (360) days of the entry date of this Order.

20.    Defendant Galveston Portfolio shall, within thirty (30) days of completion, notify counsel for the United States of the completion of each retrofit called for under this Order.

## VIII.  NEUTRAL INSPECTION OF RETROFITS

21.    Defendant Galveston Portfolio shall enter into a contract with a neutral inspector ("Inspector"), as approved by the United States, to conduct on-site inspections of the retrofits that have been performed under this Order to determine if they have been completed in accordance with the specifications in this Order's Appendix A.  Defendant Galveston Portfolio shall pay all the Inspector's reasonable costs associated with the inspections, and such payments shall be made without regard to the Inspector's findings.  The Inspector shall have expertise in the design and construction requirements of the FHA.  The United States may have its representative(s) present for each inspection at its expense.

22.    An inspection shall take place within thirty (30) days of the completion of all the retrofits required by this Order.  Defendant Galveston Portfolio shall give the United States at least twenty-one (21) days' notice of any inspection and shall give the United an opportunity to have its representative(s) present for each inspection.

23.    The Inspector shall document each of the retrofits through photographs and measurements and shall, within thirty (30) days of each inspection, generate a written report detailing the completed retrofits.  Such report shall include a description of the retrofits, relevant measurements, and photographs of the completed retrofits.  Such report shall be sent to counsel for Defendant Galveston Portfolio and for the United States.  The United States shall review the Inspector's report to determine whether all the required retrofits have been made as specified in the Appendix A.  Within forty-five (45) days of receiving the Inspector's report, the United States will notify Defendant Galveston Portfolio if any of the required retrofits have not been properly completed ("Notice of Noncompliance").

24.    Defendant Galveston Portfolio shall correct any deficiencies within one-hundred and twenty (120) days of receiving a Notice of Noncompliance from the United States and shall arrange for another inspection by the same Inspector to certify that the deficiencies have been corrected.  Defendant Galveston Portfolio shall give notice of any subsequent inspection to counsel for the United States and give the United States an opportunity to have its representative(s) present for each subsequent inspection as set forth in Paragraph 22.  This process shall continue until the United States certifies that all the necessary retrofits have been

made.   Upon reasonable notice to Defendant Galveston Portfolio, representatives of the United States shall be permitted to inspect the retrofits made by Defendant Galveston Portfolio in accordance with this Order to ensure compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

### IX.   CONSTUCION OF NEW BUILDING AND NEW LEASING OFFICE

25.   Within two (2) years and six (6) months of the entry date of this Order, Defendant Galveston Portfolio shall take all actions to complete for occupancy a 4-level, 24-unit building (the "New Building") to be located adjacent to the parking lot, and in the space currently occupied by the tennis courts, at the Seasons Resort.  All 24 units shall be serviced by an elevator, and Defendant Galveston Portfolio shall make the construction of the New Building fully compliant with the FHA Guidelines, with the additional requirements as set forth below:

- The New Building shall have a diversity of unit-types, including, but not limited to 1-bedroom unit types and 2-bedroom unit types.
- The New Building shall have accessible pedestrian routes to all amenities in the Subject Property, including the: swimming pool; fountains; mailbox kiosk; pet waste station; emergency phone; and dumpster, as well as to the public street.
- Eight of the 24 units in the New Building shall be constructed to conform with ANSI 117.1, §§ 1003.1-1003.14 (2003) Type A units or an equivalent standard approved by the United States, and will include one bathroom with a roll-in shower.
- All common use areas at the New Building shall be constructed in conformance with ANSI 117.1 (2003) or an equivalent standard approved by the United States.

26.   Within two (2) years and six (6) months of the entry date of this Order, Defendant Galveston Portfolio shall take all actions to complete for occupancy a leasing office (the "New Leasing Office") adjacent to the New Building.  The New Leasing Office shall be fully compliant with the ADA and the ADA Standards.

27.   During the term of this Order, upon reasonable notice, the United States will be permitted full access to the New Building and the New Leasing Office to inspect for compliance with the FHA, the FHA Guidelines, the ADA, the ADA Standards, ANSI 117.1 (2003), and any additional accessibility features required by this Order, and it shall also be permitted full access to all construction drawings for the New Building and the New Leasing Office.

28.   Within two (2) years and six (6) months of the entry date of this Order, Defendant Galveston Portfolio shall provide a certification from a neutral architectural firm not associated with the design or construction of the New Building or the New Leasing Office, and approved by the United States, that the New Building and the New Leasing Office are fully compliant with the FHA, the FHA Guidelines, the ADA, the ADA Standards, ANSI 117.1 (2003), and any

additional accessibility features required by this Order.  Defendant Galveston Portfolio shall bear all costs associated with providing such inspection(s) and certifications.

29.    If Defendant Galveston Portfolio fail to comply with all of the requirements of paragraphs 25-28, then it shall take the following actions within twenty-four (24) months of the date of non-compliance with the requirements of paragraph 25-28:

- Provide accessible routes from an accessible parking space that are compliant with the FHA and the Fair Housing Act Guidelines to all covered units within the Subject Property.  Accessible routes from these covered units also shall be provided to the amenities at the Subject Property, and the covered units themselves shall be retrofitted so that they comply with the FHA and the Fair Housing Act Guidelines.

- Retrofit the existing leasing office so that it is compliant with the ADA and the ADA Standards.

30.    Defendant Galveston Portfolio's failure to comply with paragraphs 25-28 shall cause it to take the actions outlined in paragraph 29.

## X.    TRANSFER OF INTEREST IN PROPERTY

31.    The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of the Subject Property shall not affect Defendant Galveston Portfolio's continuing obligation to retrofit the Subject Property and/or construct the New Building and Leasing Office as specified in this Order, unless otherwise agreed to in a writing signed by Defendant Galveston Portfolio, the United States, and the applicable transferee or proposed transferee in which the transferee assumes Defendant Galveston Portfolio's continuing obligations hereunder.

32.    Should Galveston Portfolio decide to sell or transfer ownership of the Seasons Resort, or any portion thereof, prior to the completion of the retrofits specified in Appendix A of this Order, Galveston Portfolio shall at least thirty (30) days prior to completion of the sale or transfer:  (a) provide to each prospective buyer written notice that the Subject Property is subject to this Order, including specifically the owner's obligations to complete required retrofit work and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by email and first-class mail, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

## XI.    SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS

33.     Within sixty (60) days after the entry date of this Order, Defendant Galveston Portfolio shall deposit in an interest-bearing account the total sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000) for the purpose of paying monetary damages to any aggrieved persons who may have been harmed as a result of the alleged discriminatory housing practices by Defendants.  This money shall be referred to as the "Settlement Fund," and shall be for the purpose of compensating any aggrieved persons who may have suffered as a result of the alleged discriminatory housing practices by Defendants.

34.     Within sixty (60) days of the entry date of this Order, Defendant Galveston Portfolio shall publish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix B informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in newspapers of general circulation serving each locality in which an FHA Property is located. The publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday, Defendant Galveston Portfolio shall provide a copy of the Notice to counsel for the United States within thirty (30) days after the final publication.

35.     Within sixty (60) days of the entry date of this Order, Defendant Galveston Portfolio shall send a copy of the Notice to each of the following organizations:

> Mounting Horizons Center for Independent Living
> 4700 Broadway Ave.
> Suite E100
> Galveston, TX 77551
> www.mhcil.org
> Phone: 409-356-4809
> Email: info@mhcil.org
>
> Houston Center for Independent Living
> 6201 Bonhomme Road
> Suite 150 S.
> Houston, TX 77036
> www.hcil.cc/
> Phone: 713-974-4621 V/TTY

Disability Rights Texas
1500 McGowen, St. #100
Houston, Texas 77004
Phone: 832-681-8200
Fax: 713-974-7695
Intake: 800-252-9108

Sunshine Center, Inc.
1726 21st Street
Galveston, TX 77550
409-763-5029
scarmona@sunshinecenterinc.org

Disabled American Veterans
1616 Cypress Hollow St
Pearland, TX
281-482-1729

36.      Within six (6) months of the entry date of this Order, Defendant Galveston
Portfolio shall send, by first-class mail, postage pre-paid, a copy of the Notice to each past or
present tenant at the Seasons Resort, for whom Defendant has records.  For past tenants,
Defendant Galveston Portfolio will have complied with the requirements of this paragraph by
mailing such notice to the forwarding address provided to the owners or managers of the Seasons
Resort or their agents by the former tenant at the time the former tenant moved out. Within seven
(7) months of the entry date of this Order, Defendant Galveston Portfolio shall provide to
counsel for the United States an affidavit attesting to the fact that the Notices have been sent.

37.      The Notice shall invite allegedly aggrieved persons to contact the United States
within eight (8) months from the date of this Order.  The United States shall make a preliminary
determination of which persons are aggrieved and whether any amount of damages should be
paid to each such person.  The determinations of the appropriate amount of damages shall total
no more than $75,000, and the interest accrued on that amount after deposit into an account as
set forth in Paragraph 33, above. The United States will inform Defendant Galveston Portfolio,
in writing, of its determinations, together with a copy of a sworn declaration from each alleged
aggrieved person setting forth the factual basis of the claim, the amount that the United States
has determined Defendant Galveston Portfolio should pay to each alleged aggrieved person, and
a completed W-9 from each alleged aggrieved person.  Within thirty (30) days after the United
States provides its determinations, Defendant Galveston Portfolio shall deliver to the United
States checks payable to the alleged aggrieved persons in the amounts designated by the United
States, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the

day before the checks are sent to the United States.  In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund of $75,000 plus any accrued interest.  No allegedly aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix C.

38.     After the satisfaction of paras. 33-37, above, any money remaining in the Settlement Fund, including interest, shall be used by Defendant Galveston Portfolio for the sole purpose of performing retrofits required by Appendix A.

39.     Defendants shall permit the United States, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of alleged aggrieved persons.

40.     Nothing in this Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

## XII.   EDUCATIONAL PROGRAM

41.     Within thirty (30) days of the entry of this Order, the Defendants shall provide a copy of this Order to all their agents and employees who have supervisory authority over the design and/or construction of covered multifamily dwellings, and shall secure a signed statement from each agent or employee acknowledging that he or she has received and read the Order, and had an opportunity to have questions about the Order answered.  This statement shall be substantially in the form of Appendix D.

42.     During the term of this Order, within thirty (30) days after the date he or she commences an agency or employment with one of the Defendants, each new agent or employee who have supervisory authority over the design and/or construction of covered multifamily dwellings shall be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and had an opportunity to have questions about the Order answered.  This statement shall be substantially in the form of Appendix D.

43.     The Defendants shall also ensure that they and any other employees or agents who have supervisory authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, *A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act*, (August 1996, Rev. April 1998).  The Defendants and all employees and agents whose duties, in whole or in part, involve the rental of multifamily dwellings at issue in this case shall be informed of those

portions of the Fair Housing Act and the Americans with Disabilities Act that relate to accessibility requirements, reasonable accommodations, and reasonable modifications in multi-family housing.

44.     Within three (3) months of the entry date of this Order, any Defendants and all employees and agents who have supervisory authority over the design and/or construction of multifamily dwellings of the type at issue in this case, and who have not had training in the design and construction requirements of the FHA in the last two years, shall undergo training (of one day or less in duration) on the design and construction requirements of the FHA and ADA. Defendants shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix E.

## XIII.   NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

45.     Within ten (10) days of the completion of the construction required under paragraphs 25-28, and for two (2) years thereafter, the Defendant Galveston Portfolio shall post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them, including a sign no smaller than 10 by 14 inches indicating that all dwellings are available for sale or rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

46.     Within ten (10) days of the completion of the construction required under paragraphs 25-28, and for two (2) years thereafter, in all advertising thereafter in newspapers, and on pamphlets, brochures and other promotional literature regarding the Subject Properties or any new complexes that the Defendants may develop, design, or construct, such Defendant(s) shall place, in a conspicuous location, a statement that the dwelling units include the features for persons with disabilities required by the federal Fair Housing Act.

## XIV.   NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

47.     In addition to all other reporting requirements herein, within one hundred eighty (180) days after the date of entry of this Consent Order, Defendants shall submit to the United States an initial report regarding the requirements of paras. 41-46, and containing the signed statements specified in para. 41, 42, and 45 of this Order.  Thereafter, every six months during the term of this Order, Defendant Galveston Portfolio will submit to the United States a compliance report detailing the retrofitting and inspections of the retrofits and new construction at the Subject Property under Sections VII–IX.  In addition, each year, on the anniversary of the

entry of this Order, the Defendants will submit to the United States a report containing the signed statements of new employees and agents that, in accordance with para. 42 of this Consent Order, they have received and read the Consent Order and have had an opportunity to have questions about the Order answered, except that the last compliance report will be due sixty (60) days prior to the expiration of the Consent Order.

48.     For the duration of this Order, Defendants shall advise the United States in writing within fifteen (15) days of receipt of any written or oral administrative or legal fair housing complaint against any property owned, managed, or against any employees, agents, or franchisees of the Defendants working at or for any such property, regarding discrimination on the basis of disability, or regarding retaliation, in housing.  Upon reasonable notice, the Defendants shall also provide the United States all information it may request concerning any such complaint.  The Defendants shall also notify the United States in writing within fifteen (15) days of the resolution of any such complaint.

49.     For the term of this Consent Order, Defendants are required to preserve all records related to this Consent Order for all covered multifamily dwellings designed, constructed, or owned by them.  Upon reasonable notice to the Defendants, representatives of the United States shall be permitted to inspect and copy any records of the Defendants or inspect any developments or residential units under the Defendants' control bearing on compliance with this Consent Order at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants from such inspections.

## XV.    COMPLIANCE TESTING

50.     The United States may take steps to monitor the Defendants' compliance with this Consent Order including, but not limited to, by conducting fair housing tests at any location(s) in which the Defendants' employees or agents conduct rental activities.

## XVI.   TERMINATION OF LITIGATION HOLD

51.     The Parties agree that, as of the date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above or in the United States' Complaint.  To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the Party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any Party of any other obligations imposed by this Order.

## XVII.  DURATION AND TERM

52.     This Consent Order will remain in effect for five (5) years after the date of its entry or until all of the actions required of the Defendants herein are completed, whichever is later. If the actions required by this Order are not completed within five (5) years, the Defendants shall submit, on the fifth anniversary of the entry of this Order, a report to the Court and the United States describing the unmet obligations and their projected completion date(s). The Defendants shall submit a similar report to the Court and the United States every six (6) months thereafter until all unmet obligations are completed, at which point the Defendants shall submit a report certifying that all obligations have been fulfilled. The Consent Order will expire sixty (60) days after the final report is filed with the Court.

53.     By consenting to entry of this Order, the parties agree that in the event that a Defendant engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the Fair Housing Act, such conduct will constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## XVIII.    TIME FOR PERFORMANCE

54.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the Defendants.

SO ORDERED on this 6th day of December, 2019  :

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

Agreed to by the parties as indicated by the signatures appearing below:

**For the United States**:


RYAN K. PATRICK                      ERIC S. DREIBAND
United States Attorney               Assistant Attorney General
Southern District of Texas           Civil Rights Division



s/ Elizabeth F. Karpati              s/ Sara L. Niles
ELIZABETH F. KARPATI                 SAMEENA SHEENA MAJEED
Assistant United States Attorney     Chief
State Bar No. 00794069               TIMOTHY J. MORAN
SDTX: 20567                          Deputy Chief
1000 Louisiana, Suite 2300           SARA L. NILES
Houston TX 77002                     Trial Attorney
(713) 567-9767 (PHONE)               Housing and Civil Enforcement Section
(713) 718-3303 (FAX)                 Civil Rights Division
Email: Elizabeth.Karpati@usdoj.gov   U.S. Department of Justice
                                     4 Constitution Square
                                     150 M Street, NE, Suite 8.119
                                     Washington, DC 20530
                                     Phone: (202) 514-2168
                                     Email: Sara.Niles@usdoj.gov

                                     Attorneys for Plaintiff
                                     United States of America


**Dated**: December 3, 2019

FOR DEFENDANT TFT GALVESTON PORTFOLIO, LTD.:

GENERAL PARTNER                                   OAKS, HARTLINE & DALY, L.L.P.

TFT PORTFOLIO INVESTMENTS, LLC
As General Partner of TFT Galveston Portfolio, Ltd.

By: _____            KENNETH S. WALL
    Jon Christopher Teachworth                  Southern District No. 11073
    Manager of TFT Portfolio Investments, LLC   State Bar No. 20756790
                                                wall@ohdlegal.com
                                                EDWARD E. HARTLINE (*pro hac vice*)
                                                State Bar No. 09159600
                                                hartline@ohdlegal.com
                                                JYOTPAL SINGH
                                                Southern District No. 3351149
                                                State Bar No. 24070627
                                                singh@ohdlegal.com
                                                2323 S. Shepherd, 14th Floor
                                                Houston, Texas 77019
                                                Tel. (713) 979-5566
                                                Fax (713) 979-4440

Dated: November 26, 2019

FOR DEFENDANT JAMES W. GARTWELL, JR.

JAMES W. GARTWELL, JR.

Dated: OCTOBER 30, 2019

## APPENDIX A

Defendants will make the following modifications to the public and common use areas at the Subject Property:

1. Provide a compliant accessible covered parking space at the residents' parking lot to include an unobstructed access aisle;
2. Retrofit and/or relocate the mailboxes serving all covered units so that the key slots are within the reach range of 48" above the ground for a forward approach or 54" above the ground for a parallel approach;
3. Provide protections around protruding objects in circulation paths;
4. Provide accessible pedestrian routes from covered unit front entrances to the following:
   - accessible parking;
   - the adjacent public street; and
   - on-site amenities at the Subject Property, including the: swimming pool; fountains; mailbox kiosk; pet waste stations; emergency telephone; and dumpster,

   by, among other things, providing a continuous walkway that is at least 36" wide, without steps, lips, thresholds, and excessive slopes[1]; and replacing grates so that openings do not exceed ½" wide.

---

[1] A running slope of an accessible route can be any slope between 0% and 8.33%. For slope of 0% to 5%, the route is considered to be usable without the addition of handrails. When the running slope of a walking surface is in the range of 5.1%-8.33%, it is considered a ramp and is subject to additional requirements. *See* Guidelines Requirements 1 & 2; 1986 ANSI 4.7.2 and 4.8.2; 2003 ANSI 405.2. Cross slopes on an accessible route may not exceed 2.2%. *See* Guidelines Requirements 1 & 2; 1986 ANSI 4.3.7; 2003 ANSI 403.3; IBC 2006 1010.3.

## **APPENDIX B**
## **NOTICE TO POTENTIAL VICTIMS OF ALLEGED DISCRIMINATION AGAINST PERSONS WITH DISABILITIES AT THE SEASONS RESORT IN GALVESTON, TEXAS**

On _____, 2019, the United States District Court for the Southern District of Texas entered a Consent Order resolving a housing discrimination lawsuit brought by the United States against Galveston Portfolio Ltd., and James W. Gartrell, Jr.  The lawsuit alleges that the units and many common use areas at a portion of the Seasons Resort constructed in 2003 (for example, leasing office, routes to amenities, etc.) do not meet the design and construction requirements of the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA"). Pursuant to this Consent Order, Defendants have agreed to retrofits common use areas to comply with the FHA and ADA at the addition to the Seasons Resort constructed for first occupancy in 2003, and to build new handicapped accessible units and an accessible leasing office on the property.

The Consent Order also establishes a Settlement Fund to compensate persons who have been harmed as a result of this alleged discrimination at any of this property. You or members of your family may be qualified to recover from the Settlement Fund if you or members of your family allege that you:

- were discouraged from living at the Seasons Resort because of the lack of accessible features of the apartment or the complex;

- rented an apartment but were unable to use, or had difficulties using portions of your apartment or the complex because they were not accessible (including the inability to have visitors who have disabilities);

- paid to have any portion of your apartment or the complex modified to be more accessible;

*If you believe you have been harmed because of your disability at any of the above-named apartment complexes, or if you have information about someone else who may have been harmed, please contact the United States Department of Justice at: 1-800---------, ext. -.*

*You also may write to United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 950 Pennsylvania Avenue, N.W. – G St., Washington, DC, 20530, Att: DJ 175-74-274.*

**\*\*\* You must call or write no later than ___ days from _____ to be eligible for compensation, and your telephone message or letter must include your name, address, and, if possible, at least two telephone numbers where you may be reached.**

## APPENDIX C

## FULL AND FINAL RELEASE OF CLAIMS

In consideration of and contingent upon payment of the sum of (dollars) $_____
pursuant to the terms of the Consent Order in the case of *United States v. TFT Galveston
Portfolio, Ltd., and James W. Gartrell, Jr.,* Civil No. 3:19-cv-70 (S.D. TX), I hereby fully release
and forever discharge TFT Galveston Portfolio, Ltd., and James W. Gartrell, Jr., along with their
insurers, co-insurers, reinsurers, attorneys, related companies, principals, predecessors,
successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders,
subsidiaries, employees, former employees, independent contractors, heirs, executors, and
administrators and any persons acting under their respective direction or control, arising prior to
the date of this Release related to the facts at issue in the litigation referenced above and related
to the violations of the Fair Housing Act and Americans with Disabilities Act alleged in the
United States' complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____, 20__.


_____

[Signature]


_____

[Print Name]

## **APPENDIX D**

### Employee Statement

I _____, am an employee of [Name of Defendant],
_____ at [Where duties are performed] _____and my duties
include supervisory authority over the design and/or construction of covered dwellings.   I have
received and read a copy of the Consent Order in *United States v.  TFT Galveston Portfolio, Ltd.,
as successor in interest to TFT #3, Ltd, and James W. Gartrell, Jr., Civ. No. 3:19-cv-70 (S.D.
Texas).,* and have been given instruction on (1) the terms of this Consent Order, (2) the
requirements of the Fair Housing Act, particularly related to the Act's design and construction
requirements; and (3) my responsibilities and obligations under the Consent Order and the Fair
Housing Act.

_____
Date


_____
[Employee Signature]

## **APPENDIX E**

## **EMPLOYEE TRAINING ACKNOWLEDGMENT**

      I acknowledge that on _____, 20____, I attended training on the design and construction requirements of the FHA and the ADA, as required by the Consent Order resolving the lawsuit captioned <u>United States v. TFT Galveston Portfolio, Ltd., and James W. Gartrell, Jr.</u>, Civil No. 3:19-cv-70 (S.D. TX)

_____
Signature

_____
Print Name

_____
Job Title

_____
Company

_____
Address

_____
Address Continued

_____
Telephone Number

_____
Date